IN THE UNITED STATES
DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| DANIEL MILLER<br>Personally<br>121 S Main St #105,<br>Akron, OH 44308 | CASE NO.<br><br>JUDGE |
| DANIEL MILLER<br>as President<br>Argo Wealth Management, Inc<br>121 S Main St #105,<br>Akron, OH 44308 | **COMPLAINT FOR DAMAGES IN EXCESS OF $75,000.00** |
| AURORA HILL, LTD<br>121 S Main St #105,<br>Akron, OH 44308 | |
| Plaintiffs | |
| -vs- | |
| JEFFREY BARCLAY<br>200 S Michigan Ave #1100,<br>Chicago, IL 60604 | |
| HOWARD & HOWARD<br>200 S Michigan Ave #1100,<br>Chicago, IL 60604 | |
| Defendants | |

Now come Plaintiffs, Daniel Miller Personally, Daniel Miller as President of

Argo Wealth Management, Inc., and Daniel Miller as President of the General

Partner of Aurora Hill Limited Partnership, by and through undersigned counsel,

and states their Complaint against the Defendants Jeffrey Barclay and Howard & Howard, hereinafter, the defendants.

## Parties

1. Daniel Miller is personally a client of the defendants in this matter and personally a resident of Aurora Ohio in the County of Portage.

2. Daniel Miller is Pres. of Argo Wealth Management Inc. a C Corp. business within the state of Ohio and located in Akron Ohio, in the County of Summit. Argo wealth management Inc. was a client of the defendants.

3. Daniel Miller is the Gen. Partner of Aurora Hill, a limited partnership located within the state of Ohio and doing business in Akron, Ohio, in the County of Summit. Aurora Hill was a client of the defendants.

4. Jeffrey Barclay is an attorney licensed to practice in the State of Illinois, who via agreement performed extensive work for all plaintiffs over a period of years via oral agreement in the County of Summit, State of Ohio.

5. Howard and Howard is a law firm located in the State of Illinois, who at all times relevant employed Attorney Jeffrey Barclay and received funds from the plaintiffs in this matter in exchange for legal work done in the County of Summit, State of Ohio.

## Jurisdiction

6. The Court in this matter has personal jurisdiction over this matter as the defendants represented the plaintiffs, all Ohio residents, in substantial matters over a period of years for costs of hundreds of thousands of dollars, and that representation caused the harm detailed below. Therefore O.R.C. section

2307.382 establishes the requisite personal jurisdiction in this matter. Specifically the defendants availed themselves of the State of Ohio by repeatedly doing business with multiple Ohio businesses of the plaintiffs for matters that involved Ohio managers, an Ohio Corporation, and Ohio investors in the plaintiff funds. The regulatory actions taken against the plaintiff as a result of the malpractice detailed below occurred within Ohio.

FACTS COMMON TO ALL COUNTS

7. That Mr. Miller, personally and on behalf of Argo Futures Group, Inc. Engaged the services of Jeff Barclay on September 6, 2006.

8. At the time Miller engaged the services of Defendant Barclay, Attorney Barclay held himself out as an expert in U.S. Commodities and Securities Law, compliance issues, regulatory actions.

9. That his advertised services included, but were not limited to representation of parties before the CFTC, SEC, NFA, FINARA and the CME in contested proceedings and regulatory actions, performance of compliance reviews of existing documents and the drafting of operating agreements and disclosure documents and all other required compliance documents for commodity trading advisors, commodity pool operators to operate.

10. That in October of 2014, Defendant Barclay moved his practice to Defendant H&H, where he continues to be employed.

11. That Defendant Barclay has continued to make these representations with regards to his expertise, area of specialization and practice focus. See howardandhoward.com

12. That commodity trading pool operators, commodity trading advisors are governed by two separate but related regulatory systems, the Commodity Futures Trading Commission, and the National Future Association regulations.

13. That violation of either of these regulatory systems can result in severe penalties for a party operating under their ausipices.

14. That Defendants Barclay and H&H were retained and compensated to perform document drafting, document review and document and practice defense services by Plaintiffs related to the operating of a commodity pool, Aurora Hill Limited, beginning in 2018.

15. That these services were provided to Plaintiffs by Defendants Barclay and H&H at a rate varying from $445.00 per hour to $475.00/per hour.

16. That Aurora Hill was a partnership commodity trading concern, where individuals would buy a share of the partnership, with the understanding that their money would be pooled and then traded by one or more Commodity Trading Advisors (CTA's).

17. That Barclay, as part of his engagement with Plaintiffs, and while under the employ of Defendant H&H, did prepare all necessary documents for the Aurora Hill as a commodity trading pool.

18. That These documents included the September 15, 2018 PPM.

19. That per the September 15, 2018 PPM, Argo would trade approximately 5% of the partnership's actual assets, with the remaining 95% to e traded by independent CTA's.

20. That the PPM identified four (4) independent CTA's for trading, in addition to Argo.

21. That per the September 2018 PPM, the CTA's fees for trading was $8.00 per round turn.

22. In contrast, Argo's trades were described as being charged at $58.00 per round turn with what Barclay described as a "commission rebate" of $50.00 per round turn.

23. That Aurora Hill was profitable between September 2018 and February 2019.

24. That Aurora Hill began taking losses in March 2019, which continued through June of 2019.

25. That in June of 2019, the National Futures Association, the regulatory body responsible for monitoring the activities of CTAs and CPOs under the CFTC began a routine examination of the practices and procedures of Aurora Hill and Argo.

26. That as part of the examination, all documents provided to investors, including but not limited to disclosures statements, risk assessments, trading practices, fee agreements and commissions were reviewed for compliance with CFTC regulations and NFA practices.

27. That as a result of this examination, the NFA issues an Examination Letter on November 19, 2019 to Argo /Aurora Hill.

28. The Examination Letter identified four (4) specific deficiencies with the documents provided by Aurora Hill / Argo.

    a. Misleading language in charging participants $50.00 per round turn commission but describing same as a "commission rebate" on day trading

    b. Failure to adequately disclose Pool commissions, fees and other charges generally in the PPM

    c. Misleading language as to how the allocations of Pool assets were made and trading levels for the strategy

    d. Labeling the commission in the PPM as a "Commission Rebate."

29. The duty to ensure full and accurate disclosure of these issues, ensuring compliance with all Federal Statutes and regulatory bodies, was the responsibility of Defendants Barclay and H&H.

30. That the letter requested that Argo / Aurora Hill provide the NFA with a "written response of corrective action Argo would take or had already been taken", but did not imply nor directly impose any threat of further negative action.

31. That upon receiving the Examination Letter, Miller turned the matter over to Barclay for defense / adjustments to the offering documents.

32. That the Barclay /H&H response was overtly antagonistic and was focused on defending Barclay's work and not ensuring the continue right of operation of Argo / Aurora Hill, accusing the NFA of engaging in "half-truths, distortions and out-and-out lies."

33. That on information and belief, due to the antagonistic nature of the Barclay /H&H response, the NFA ceased all corrective engagement with

Plaintiff's and instead issued a letter of Complaint against Argo, Miller and another CTA trading Aurora Hill funds.

34. That concurrent with the NFA investigation Argo / Miller had an NFA action brought against them in the fall of 2019 by one of Aurora Hill's partners.

35. That the allegations brought by the partner included, but were not limited to allegations of deceptive language in the PPM, failure to adequately identify the trading program and risk and failure to properly designate the commissions / fee structure.

36. That Barclay / H&H refused to defend this action.

37. That to defend both the NFA administrative action and the NFA complaint, Miller was required to retain third party counsel.

38. That while Miller was successful in the NFA complaint action, due primarily to admissions by the complainant that he had never read the document and repeated attempts to invest further even during a time of loss, the cost of the defense was in excess of $40,000.00.

39. That in order to resolve the NFA administrative action, Miller was forced to negotiate a settlement with the NFA which resulted in Argo being permanently barred from the NFA, Miller being barred three years and a financial penalty of $100,000,00.

## COUNT I

## LEGAL MALPRACTICE

40. Plaintiffs restate the allegations contained in paragraphs 1-39 as fully rewritten

41. Barclay/ H&H were retained by Miller / Argo for the preparation of all legal documents required for the operation of the Aurora Hill Limited partnership as a commodity pool.

42. That Mr. Miller fully disclosed the intended practices of the pool, and clearly explained the way in which fees would be collected, trading would function and the how the percentage of the pool to be traded by individual traders.

43. That Barclay / H&H were selected for this task based on their advertised specialty in theses areas and represented detailed understanding of the nature and complexity of the work required to avoid CFTC / NFA violations

44. Barclay / H&H provided written operating agreements, disclosure documents, legal contracts, and all business documents for Daniel Miller's work as a commodity pool operator.

45. That Barclay/ H&H  provided written and oral guidance of the regulatory requirements Daniel Miller was expected to comply with during his work as a commodity pool operator and made changes to the system described by Miller in the documents that were offered by Aurora Hill for the stated purpose of ensuring regulatory compliance.

46. That Barclay / H&H had a duty to ensure that all statements in the offering documents of Aurora Hill were accurate and met all legal requirements under

the common law of each state, were in compliance with the Federal Regulations promulgated under the CFTC and all administrative requirements of the NFA.

47. That as a direct and proximate result of the failures of Barclay / H&H in their requisite duty of care, these documents were found to be deficient by NFA investigators.

48. That as a direct and proximate result of Barclay / H&H's duty of care, Miller and Argo were subject to a complaint filed by an Aurora Hill partner by the NFA.

49. Daniel Miller was investigated and disciplined by the National Futures Association.

50. All of the conduct for which Mr. Miller was disciplined for was conduct for which Jeffrey Barclay provided legal guidance and written documents.

51. That Plaintiffs justifiably relied upon Barclay / H&H to ensure both compliance with the trading practices of Aurora Hill and proper disclosure of same in all Aurora Hill documents.

52. That the failure to provide legal services commensurate with the standard of care required for an attorney who holds himself out as a specialist in the area of commodity trading and government regulation was the direct and proximate cause of the NFA finding of improper disclosure in the Aurora Hill offering documents.

53. That this failure to maintain the necessary standard of care subjected Plaintiffs to a private NFA complaint and NFA regulatory action that , but for

the actions of Barclay / H&H would never have occurred.

54. As a result of aforesaid malpractice and negligence, Plaintiff suffered damages in an amount to be proven at trial, said amount being in excess of $25,000.

## COUNT II

## LEGAL MALPRACTICE

55. Plaintiffs restate the allegations contained in paragraphs 1-54 as fully rewritten

56. Jeffrey Barclay was retained by Argo Wealth Management, Inc. for multiple purposes over a period of years.

57. Jeffrey Barclay provided written operating agreements, contracts, and all business documents for Argo Wealth Management Inc.

58. Jeffrey Barclay provided written and oral guidance of the regulatory requirements regarding Argo Wealth Management Inc.

59. Argo Wealth Management Inc. suffered substantial losses as a result of the guidance and documents created by Jeffrey Barclay.

60. The guidance and documents provided by Jeffrey Barclay were below the standard of care.

61. As a result of aforesaid malpractice and negligence, Plaintiff suffered damages in excess of $25,000.

## COUNT III

## LEGAL MALPRACTICE

62. Plaintiffs restate the allegations contained in paragraphs 1-61 as fully rewritten

63. Jeffrey Barclay was retained by Aurora Hill for multiple purposes over a period of years.
64. Jeffrey Barclay provided written operating agreements, contracts, and all business documents for Aurora Hill.Jeffrey Barclay provided written and oral guidance of the regulatory requirements regarding Aurora Hill.
65. The guidance and documents provided by Jeffrey Barclay were below the standard of care.
66. As a result of aforesaid malpractice and negligence, Plaintiff suffered damages in excess of $25,000.

## COUNT IV

### UNJUST ENRICHMENT AND BREACH OF CONTRACT

67. Plaintiffs restate the allegations contained in paragraphs 1-66 as fully rewritten

68. At all times relevant to this matter Jeffrey Barclay billed in a matter grossly in excess of the value provided and contrary to the oral agreements regarding fees and billing.
69. As a result of this overbilling Jeffrey Barclay has been unjustly enriched.
70. As a result of aforesaid claims, Plaintiffs suffered damages in excess of $25,000.

## COUNT V

### UNJUST ENRICHMENT AND VICARIOUS LIABILITY

71. Plaintiffs restate the allegations contained in paragraphs 1-70 as fully rewritten

72. At all times relevant to this action Howard and Howard employed Jeffrey Barclay.

73. At all times relevant to this action Howard and Howard received payments from the plaintiffs.

74. Those payments were in excess of the value of the services provided.

75. As the employer of Jeffrey Barclay Howard and Howard is vicariously liable for this malpractice as alleged in counts I, II, and III.

76. As a result of aforesaid claims, Plaintiffs suffered damages in excess of $75,000.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray:

a. On Count II the Defendant Jeffrey Barclay pays Plaintiff, Daniel Miller, their actual damages in an amount in excess of SEVENTY-FIVE THOUSAND AND 00/100 DOLLARS ($75,000);

b. On Count II the Defendant Jeffrey Barclay pays Plaintiff, Argo Wealth Management Inc, their actual damages in an amount in excess of SEVENT-FIVE THOUSAND AND 00/100 DOLLARS ($25,000);

c. On Count III the Defendant Jeffrey Barclay pays Plaintiff, Aurora Hill, their actual damages in an amount in excess of SEVENTY-FIVE THOUSAND AND 00/100 DOLLARS ($75,000);

d. On Count IV the Defendant Jeffrey Barclay pays Plaintiffs jointly their actual damages in an amount in excess of SEVENT-FIVE THOUSAND AND 00/100 DOLLARS ($75,000);

e.  On Count V the Defendant Howard and Howard pays Plaintiffs, their respective damages as determined in Counts I, II, and III, in an amount in excess of TWENTY-FIVE THOUSAND AND 00/100 DOLLARS ($25,000);

f.  The Court orders the Defendant to pay Plaintiff's attorney fees, court costs and all other litigation expenses in this matter;

g.  The Court awards all such other relief as deemed appropriate.

Respectfully submitted,

/s/ Jay F Crook
Jay F. Crook #0078499
Jay F. Crook, Attorney at Law, LLC
30601 Euclid Avenue
Wickliffe, OH 44092
PH: 440-725-6203
EMAIL: jaycrooklaw@outlook.com